

FILED by __ D.C.
ELECTRONIC

Jun 14 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 05-80806--CIV--MIDDLEBROOKS - JOHNSON

ALLISON J. DAVIS, on behalf of herself
and others similarly situated,

      Plaintiffs,                            **Document Filed Electronically**

v.

BANK OF AMERICA, N.A.,

      Defendant.

-----------------------------------------------------------/

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
## APPROVING SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE

On March 31, 2006, the Court entered an Order Preliminarily Approving Class Action

Settlement of this action and directing, among other things, dissemination of notice to the class

members. This Court has scheduled a hearing for June 21, 2006 to consider final approval of the

settlement. Accordingly, Defendant, Bank of America, N.A., submits the following Proposed

Findings of Fact and Conclusions of Law in connection with final approval of the settlement as

fair, adequate and reasonable.

### I.      PROPOSED FINDINGS OF FACT

**A.      The Parties And Their Counsel.**

    1.     The named Plaintiff is a citizen of and resident of the state of Florida. The named

Plaintiff and the class members (collectively "Plaintiffs") are represented by Tod Aronovitz of

Aronovitz Trial Lawyers; John A. Yanchunis of James Hoyer Newcomer & Smiljanich, P.A.;

David D. Welch of Welch & Finkel; Joel S. Perwin of Joel Perwin, P.A.; Peter A. Portley of

Portley and Sullivan; and James K. Green of James K. Green, P.A., (collectively "Class

Counsel").

42/rb

2.     Defendant, Bank of America, N.A. ("Bank"), is a national banking association with its principal place of business in Charlotte, North Carolina.

**B.     Plaintiff's Claims.**

3.     Plaintiff principally alleges that the Bank improperly obtained certain personal data about the class members from the Florida Department of Highway Safety and Motor Vehicles (the "DHSMV") and used that information for impermissible purposes in violation of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725 (2000) ("DPPA").

4.     The class is alleged to include all persons whose personal information was disclosed by the Florida DHSMV to the Bank.

5.     The Bank has denied all liability and maintains that it did not violate the DPPA.

**C.     Pre-Settlement Discovery.**

6.     The parties engaged in extensive discovery prior to reaching their settlement. Written discovery requests were exchanged and answered, relevant documents were produced, and depositions of individuals with pertinent knowledge of the factual and legal issues were taken by both Plaintiff and the Bank.

7.     This discovery has confirmed that the Florida DHSMV provided limited data relating to owners of luxury cars in Palm Beach County to the Bank on one occasion in May, 2003. That data included names, addresses, and other information.

8.     The two Bank individuals who requested the data from the Florida DHSMV worked in the Bank's "Research and Analytics Area," and the Bank contends that the data was obtained for research purposes.

9.      After receiving the data, the Bank contends that it promptly determined that it was not the type of data that was useful to the Bank.  The depositions and written discovery show that the Bank did not disseminate the data or take any actions based upon it.  More specifically, the Bank maintains that it did not use the data for marketing or in any way publish, redisclose, or use the data to contact individuals.

10.     Because it did not disseminate or take any actions based upon the data, the Bank contends that it did not violate the DPPA and that in any event Plaintiffs did not suffer any actual compensatory damages as the result of the alleged violation of the DPPA.

11.     Plaintiffs contend that their personal information was improperly obtained and that the Bank's "research" was for marketing purposes, therefore entitling them to damages under the DPPA.

**D.      The Settlement Agreement.**

12.     The parties agreed to settle this dispute without a determination on the merits.  The settlement expressly disclaims any concession of liability on the part of the Bank and should not be considered an admission of liability in any respect.

13.     Plaintiff, on her own behalf and on behalf of the plaintiff class members, entered into a Settlement Agreement and Release with the Bank dated February 28, 2006.  That agreement was filed with the Court.  Docket No. 34.  This Court preliminarily approved the settlement by order dated March 31, 2006.  Docket No. 38.

14.     The Settlement Agreement defines the class as all persons:

    (i)     whose personal information was provided by the DHSMV to [the Bank] in May, 2003;

    (ii)    who are not and have not been employed by [the Bank] or any of its subsidiaries, parents (or their subsidiaries) or affiliates since March, 2003; and

(iii)  who are not and have not been members of the federal judiciary since March, 2003.

15.    Under the terms of the Settlement Agreement:  (1) the Bank will not use, disclose or sell the data which was sent to it from the Florida DHSMV in May, 2003; (2) except as provided in the Settlement Agreement, the Bank will destroy the data which was sent to it from the Florida DHSMV in May, 2003; (3) each class member making a claim will be paid up to $150; (4) all settlement administration costs will be paid by the Bank; and (5) the Class Counsel's fees, as determined by this Court up to $1.2 million, will be paid by the Bank.

16.    Each class member that makes a claim will be paid a maximum of $150, provided that the payments to class members and Class Counsel's fees combined do not exceed $6,000,000.  To the extent that the combined payments to class members and Class Counsel would exceed $6,000,000, each class member will receive an amount equal to his or her pro rata share (based on the number of claims submitted) of the difference of $6,000,000 minus the fees payable to Class Counsel.

17.    Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), on or about March 10, 2006, the Bank notified the Office of the Comptroller of the Currency ("OCC") and the Florida Attorney General's Office of the proposed settlement in accordance with CAFA. See Exhibit A, Affidavit of Joseph E. Culleiton and Exhibit 1 thereto.

18.    The Comptroller of the Currency on or about April 21, 2006 (during the time in which the class members were being notified of the settlement), issued OCC Bulletin 2006-20, which outlined its position as to what must be disclosed for related settlements.  On or about May 9, 2006, the Bank provided additional notice to comply with the OCC's bulletin and sent a second notice of class action settlement.  Id. and Exhibit 2 thereto.

19.     Neither the Florida Attorney General nor the OCC have taken any action with respect to the settlement, nor are they required to do so under CAFA.

20.     On or about April 17, 2006, the settlement administrator, Tilghman & Co., P.C., sent 44,437 notices and claim forms to all potential class members in accordance with the terms of the Settlement Agreement.  See Affidavit of L. Stephens Tilghman at ¶ 11, which was attached as Exhibit A to Plaintiff's Memorandum of Law in Support of Her Motion for Final Approval of Proposed Settlement, Final Certification of the Class, and Incentive Award to Class Representative.

21.     Class members were given the opportunity to object to the settlement or to opt-out.  To date no class member has objected.  Only seventeen class members have opted out of the settlement.  See Affidavit of L. Stephens Tilghman at ¶ 11.

22.     The American Civil Liberties Union of Florida has submitted a declaration in support of the settlement.  See Declaration of Randall C. Marshall (Docket No. 40).

23.     Over 7,000 class members have submitted claims forms pursuant to the terms of the Settlement Agreement.  See Affidavit of L. Stephens Tilghman at ¶ 11.

## II.     PROPOSED CONCLUSIONS OF LAW

24.     Federal Rule of Civil Procedure 23(e) requires all class action settlements to be approved by the court.  Fed.R.Civ.P. 23(e).  "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."  In re Sunbeam Sec. Litig., 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (J. Middlebrooks) quoting Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977); Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).  "[I]n reviewing a proposed settlement … the Court must take into account 'the clear policy in favor of encouraging settlements, … particularly in an area where voluntary

compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'" LiPuma v. American Express Co., 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (quoting Patterson v. Newspaper & Mail Deliverers' Union, 514 F.2d 767, 771 (2d Cir. 1975)); In re Sunbeam, 176 F. Supp. 2d at 1329.

**A.      The Settlement is "Fair, Adequate and Reasonable."**

25.    In evaluating whether a proposed settlement is fair, adequate and reasonable, the Eleventh Circuit requires consideration of the following six factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable; (4) the complexity, expenses, and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. Bennett, 737 F.2d at 986. As guidance in assessing the six factors, "the Court should be hesitant to substitute…her own judgment for that of counsel." LiPuma, 406 F. Supp. 2d at 1315 (quotation marks and citations omitted).

**The Likelihood of Success at Trial.**

26.    To sustain a private cause of action under the DPPA, a plaintiff must prove that the Bank knowingly obtained, disclosed or used the class member's personal information "for purposes not permitted" by the DPPA, including marketing. See 18 U.S.C. § 2724.

27.    Plaintiffs contend that because the Bank obtained class member information from the DHSMV without the prior consent of the class members, the Bank violated the DPPA. The Bank contends that it cannot be held liable because: (1) it did not knowingly obtain the information in violation of the DPPA; (2) it did not use the information for an impermissible purpose under the DPPA; and (3) the members of the class have not sustained any damages. The consideration of these arguments establishes that there is a significant dispute on liability. This dispute impacts the likelihood of success at trial and weighs in favor of settlement.

### a.      Knowingly Obtain the Information.

28.     The Bank would present evidence at trial that it asked the Florida DHSMV if there were any privacy issues related to obtaining the data and the Florida DHSMV confirmed, in writing, that the Bank would only be given the information that it was allowed to disclose.  The Bank argues that it was permitted to rely upon the Florida DHSMV's representation that it would only disclose information to the Bank that it was permitted to disclose.  The Bank contends that it had no reason to suspect that the Florida DHSMV did not have internal procedures in place to ensure that it was in compliance with federal law.  Accordingly, the Bank contends that it will not be held liable because it did not knowingly obtain the Plaintiffs' personal information in violation of the DPPA.

### b.      Impermissible Use.

29.     The Bank claims that its use of the data was permitted by the DPPA.  Specifically, Section 2721(b)(5) of the DPPA states that personal information may be disclosed by the State: "For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals."

30.     The Bank would present evidence at trial that it obtained the data for research purposes only, a use which is permissible under the DPPA, and that it did not publish, disclose or use the information to contact individuals.  Further, the Bank contends that the evidence would prove that (1) it quickly determined after receiving the data that it was not the type of data that was useful to the Bank, and (2) it did not use the data at all.

31.     Plaintiffs contend that the Bank's "research" was the equivalent of marketing purposes, in violation of the DPPA.

c.       **Damages.**

32.     An award of monetary damages for violation of the DPPA is discretionary.  18 U.S.C. § 2724(b) ("The Court *may* award") (emphasis added)); <u>Kehoe v. Fidelity Federal Bank & Trust,</u> 421 F.3d 1209, 1216-17 (11th Cir. 2005) (concluding that the use of the word "may" in the DPPA suggests that the award of *any* damages is "permissive and discretionary."), <u>cert. denied,</u> 126 S.Ct. 1612 (2006).

33.     The Bank claims that it did not disclose the Plaintiffs' data and, as a result, the Plaintiffs did not sustain any cognizable damages.

34.     The Plaintiffs contend that their privacy rights were violated and they are therefore entitled to some level of compensation.

35.     In light of the Bank's multiple defenses on the merits and the uncertainty of Plaintiffs' right to recover damages, the Court finds that there is a substantial question as to the likelihood of complete success at trial.  This factor weighs in favor of approving the proposed settlement.

**The Range of Possible Recovery & The Point on That Range
That the Settlement is Fair, Adequate and Reasonable.**

36.     The second and third considerations of the factors set forth in <u>Bennett</u> are often combined.  <u>Behrens v. Wometco Enters., Inc.,</u> 118 F.R.D. 534, 541 (S.D. Fla. 1988), <u>aff'd,</u> 899 F.2d 21 (11th Cir. 1990).  "The Court must first determine the appropriate standard of damages (in order to calculate the range of recovery), and then go on to determine where in this range of recovery a fair, adequate and reasonable settlement amount is found." <u>In re Sunbeam</u>, 176 F. Supp. 2d at 1331.

37.     Plaintiffs claim that the class members are entitled to an award of statutory damages of $2,500 for each alleged violation of the DPPA, totaling $125,000,000.  However, as set forth above, the award of damages for violation of the DPPA is discretionary, and in this case the

Bank both vigorously disputes liability and disputes that monetary damages are appropriate. While the possible recovery could be anywhere from $0 to $125,000,000, given the Bank's legitimate defenses and the difficulty in calculating damages, the appropriate standard of damages could be significantly less than $125,000,000.

38.     The proposed settlement provides for a payment of $150 for each class member that submits a claim, up to a maximum of $6,000,000 total, minus the fees payable to class counsel. In light of the Eleventh Circuit's opinion in Kehoe, making it clear that an award of damages under the DPPA is permissive, not mandatory, payment of an amount that is less than the amount of liquidated damages set by statute is a reasonable course of action.  See Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise.  A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."), aff'd, 899 F.2d 21 (11th Cir. 1990).

39.     Unrelated third parties such as the Florida ACLU agree that "the settlement contemplates a significant financial recovery to a readily identifiable class of individuals whose personal information was obtained by the Bank of America in May 2003."  See Randall C. Marshall Declaration at ¶ 14.  (Docket No. 40).

40.     The Court is especially comfortable with the settlement amount because all parties involved (including the Florida ACLU) agree that the total monetary and injunctive relief is significant enough to vindicate the privacy interests of the class members.

41.     A key component of the settlement for Plaintiffs also is the requirement that the Bank destroy the information obtained by it from the DHSMV in May, 2003, therefore ensuring that the information is not used for inappropriate purposes.  Other aspects of the settlement, including the notices mailed to the class members, costs of administration, and the Bank's agreement to

-9-

pay up to $25,000 for an outside records security consultant to ensure that the data obtained from the DHSMV has been destroyed, add to the overall benefits provided to class members.

42.    The settlement both provides the class members with a monetary award to compensate them for the fact that their information was disclosed to the Bank and ensures the class members that their information will not be used in the future.  The settlement is therefore an appropriate standard of damages that is a fair, adequate and reasonable recovery in the range of possible recovery for this case.  These two factors weigh in favor of settlement.

### Complexity, Expense, and Duration of the Litigation.

43.    "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations."  Behrens, 118 F.R.D. at 543.

44.    Given the limited case law interpreting the DPPA as amended in 2000, there is no question that this case presents novel and complex issues for the Court.  Justice Scalia recognized these novel and complex issues in his denial of certiorari of the Kehoe case.  See Fidelity Federal Bank & Trust v. Kehoe, 126 S.Ct. 1612 (2006).  Justice Scalia deemed the issues raised by the terms of the DPPA to be of sufficient magnitude that they "may later be appropriate for [the United States Supreme Court] to consider granting certiorari."  Id.  Should this case go to trial, there is no doubt that the case (including certification of a class action) would generate multiple appellate issues as well.  Such protracted litigation would result in significant expense and delay for both parties, as well as further uncertainty on the timing of any final result.

45.    Consideration of the potential complexity, expense and duration of the litigation weigh in favor of approval of the settlement.

-10-

**Substance and Amount of Opposition to the Settlement.**

46.    Only 17 class members have opted out of the settlement and no class member has objected to the settlement.  Third parties that are not involved in this action, such as the ACLU of Florida, have submitted declarations supporting the settlement for the Florida class members. This factor weighs heavily in favor of settlement.

**Stage of the Proceedings at Which the Settlement Was Achieved.**

47.    This case was filed in September, 2005.  The parties began written discovery in October, 2005, and were well into the discovery process at the time that they agreed to settle. Written discovery requests were exchanged and answered, third-party subpoenas were issued and responded to, documents were produced, and depositions were taken by both Plaintiffs and the Bank.  Through this process, each side was fully informed on the other side's factual and legal contentions.

48.    The settlement also was reached after several months of negotiations.  The parties participated in a mediation in December, 2005, which did not result in an agreement.  They continued on with discovery, but came back to the bargaining table in February, 2006.  A final Settlement Agreement was not reached until February 28, 2006.  This case accordingly is at an appropriate stage in the proceedings for settlement to be reached.  Consideration of this factor too weighs in favor of approval of the settlement.

**B.      Class Action Fairness Act.**

49.    The Court finds that the parties have complied with the notice requirements of the CAFA.

## C.      Approval of the Settlement.

50.    The Court finds that the proposed settlement is fair, adequate and reasonable.  The settlement is ripe for approval and the Court will enter an Order consistent with these findings and conclusions.

Respectfully submitted:


Peter W. Homer
Florida Bar No. 291250
Gregory J. Trask
Florida Bar No. 0055883
**HOMER BONNER, P.A.**
Attorneys for Defendant Bank of America, N.A.
The Four Seasons Tower, Suite 1200
1441 Brickell Avenue
Miami, Florida  33131
Telephone:  (305) 350-5100
Facsimile:  (305) 372-2738
Email:  phomer@homerbonner.com
Email:  gtrask@homerbonner.com

Gregory B. Jordan
Mary J. Hackett
Joseph E. Culleiton
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063
Counsel for Defendant Bank of America, N.A.

Dated:  June 14, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June, 2006, I caused a true and correct copy of the

foregoing **Proposed Findings of Fact and Conclusions of Law Approving Settlement as Fair,**

**Adequate and Reasonable** to be served upon Plaintiff's counsel via fax and U.S. first-class

mail, postage pre-paid, and addressed as follows:

> Tod Aronovitz, Esq.
> Steven Jaffe, Esq.
> Aronovitz Trial Lawyers
> Suite 2700 – Museum Tower
> 150 W. Flagler Street
> Miami, Florida 33130
> 305-372-2772 (telephone)
> 305-375-0243 (fax)
>
> John A. Yanchunis, Esq.
> James Hoyer Newcomer & Smiljanich, P.A.
> One Urban Center, Suite 550
> 4830 West Kennedy Boulevard
> Tampa, Florida 33609
> 813-286-4100 (telephone)
> 813-286-4174 (fax)
>
> Mark S. Fistos, Esq.
> James Hoyer Newcomer & Smiljanich, P.A.
> 3301 Thomasville Road, A200
> Tallahassee, Florida 32308
> 850-325-2680 (telephone)
> 850-325-2681 (fax)
>
> David D. Welch, Esq.
> Welch & Finkel
> Suite 400 – Washington Mutual Bank Building
> 2401 E. Atlantic Boulevard
> Pompano Beach, Florida 33062
> 954-943-2020 (telephone)
> 954-782-1552 (fax)

Joel S. Perwin, Esq.
Joel S. Perwin, P.A.
169 E. Flagler Street
Alfred I. DuPont Building, Suite 1422
Miami, Florida 33131
305-779-6090 (telephone)
305-779-6095 (fax)

Peter A. Portley, Esq.
Portley and Sullivan
Lighthouse Point Professional Building
2211 E. Sample Road, Suite 204
Lighthouse Point, Florida 33064
954-781-7600 (telephone)
954-941-3469 (fax)

James K. Green, Esq.
James K. Green, P.A.
Suite 1650, Esperante'
222 Lakeview Avenue
West Palm Beach, Florida 33401
561-659-2029 (telephone)
561-655-1357 (fax)

Gregory J. Trask

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 05-80806--CIV--MIDDLEBROOKS - JOHNSON

ALLISON J. DAVIS, on behalf of herself
and others similarly situated,

        Plaintiffs,                      **Document Filed Electronically**

v.

BANK OF AMERICA, N.A.,

        Defendant.

------------------------------------------------------------/

**AFFIDAVIT OF JOSEPH E. CULLEITON**

COMMONWEALTH OF PENNSYLVANIA      :  .
                                         :  SS:

COUNTY OF ALLEGHENY                      :

AND NOW comes Joseph E. Culleiton, first being duly sworn, and states that the following is true and correct based upon personal knowledge:

1.     I am an associate with the firm of Reed Smith LLP. Reed Smith LLP has represented Bank of America, N.A. (the "Bank") in the above captioned action since October 2005.

2.     Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), on or about March 10, 2006, on behalf of the Bank, Reed Smith notified the Office of the Comptroller of the Currency ("OCC"), as well as the U.S. Department of Justice – Civil Division and the Florida Attorney General's Office, of the proposed settlement and provided the information necessary to comply with CAFA. March 10, 2006 letter, attached as Exhibit 1.

3.     The Comptroller of the Currency, on or about April 21, 2006, issued OCC Bulletin 2006-20, which outlined its position as to what must be disclosed for settlements covered by CAFA. On or about May 9, 2006, on behalf of the Bank, Reed Smith provided additional notice

**EXHIBIT A**

and information to comply with the OCC's Bulletin 2006-20.  May 9, 2006 letter, attached as Exhibit 2.

4.      Reed Smith has not received any written or oral communications or follow-up requests regarding the CAFA notices from the OCC, the Department of Justice or the Florida Attorney General's Office.

_Joseph E. Culleiton_ _____
Joseph E. Culleiton

BEFORE me, the undersigned
Authority, personally appeared **Joseph E. Culleiton**
This 13th day of June, 2006.

_Helene Czarnecki_ _____
Notary Public

My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Helene Czarnecki, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Mar. 8, 2008
Member, Pennsylvania Association of Notaries

# ReedSmith

Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
412.288.3131
Fax 412.288.3063

Mary J. Hackett
Direct Phone: 412.288.3250
Email: mhackett@reedsmith.com

March 10, 2006

**VIA UPS OVERNIGHT**

Ted Hurt, Esquire
Civil Division
U.S. Department of Justice
Room 7106
20 Massachusetts Avenue, NW
Washington, DC  20530

Timothy W. Greenway
Examiner In Charge
OCC-National Bank Examiners
101 South Tryon Street
NC1-002-31-15, 31st Floor
Charlotte, NC  28255

Office of Attorney General Charlie Crist
State of Florida
The Capitol PL-01
Tallahassee, FL  32399-1050

Re:    **Davis, et al. vs. Bank of America, N.A.**
       **U.S. District Court Southern District of Florida**
       **Case No. 05-80806-CIV-Middlebrooks/Johnson**

Dear Sir/Madam:

Pursuant to Section 1715 of the Class Action Fairness Act of 2005, Defendant Bank of America, N.A., is hereby providing notice of a proposed settlement of the above referenced class action lawsuit. In accordance with Section 1715, enclosed please find copies of the following items:

- the Complaint in this action;
- Plaintiff's Motion for Certification of Settlement Class and for Preliminary Approval of Settlement Agreement and Supporting Memorandum, which includes the proposed Notice of Class Action Settlement; and
- Defendant's Response in Support of Preliminary Approval of Settlement.

The hearing to consider the Motion for Preliminary Approval has not yet been scheduled.

**EXHIBIT 1**

NEW YORK ♦ LONDON ♦ LOS ANGELES ♦ PARIS ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND
MUNICH ♦ PRINCETON ♦ FALLS CHURCH ♦ WILMINGTON ♦ NEWARK ♦ MIDLANDS, U.K. ♦ CENTURY CITY ♦ RICHMOND ♦ LEESBURG

reedsmith.com

March 10, 2006
Page 2

**ReedSmith**

          If you have any questions or need further information, please do not hesitate to contact me.

Very truly yours,

REED SMITH LLP

By: *Mary J. Hackett /ga*

Mary J. Hackett

# ReedSmith

Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
412.288.3131
Fax 412.288.3063

**Joseph E. Culleiton**
Direct Phone: 412.288.7216
Email: jculleiton@reedsmith.com

May 9, 2006

**VIA UPS OVERNIGHT**

Timothy W. Greenway
Examiner In Charge
OCC-National Bank Examiners
101 South Tryon Street
NC1-002-31-15, 31st Floor
Charlotte, NC  28255

Director
OCC-Litigation Division
250 E Street SW
Washington, DC  20219

Re:   **Davis, et al. vs. Bank of America, N.A.**
      **U.S. District Court Southern District of Florida**
      **Case No. 05-80806-CIV-Middlebrooks/Johnson**

Dear Sir/Madam:

On March 10, 2006, in compliance with Section 1715 of the Class Action Fairness Act of 2005, Defendant Bank of America, N.A. (the "Bank"), provided the OCC with notice of a proposed settlement of the above referenced class action lawsuit. With that letter, we forwarded all required paperwork that was available.

Pursuant to OCC Bulletin 2006-20, issued April 21, 2006, we are supplementing the March 10, 2006 notice by providing the additional information requested in the Bulletin. Specifically, we have enclosed copies of:

- March 31, 2006 Order Preliminary Approving Class Action Settlement, which sets June 21, 2006 as the Final Hearing Date; and
- the notification mailed to class members.

Additionally, we estimate that the putative settlement class consists of approximately 44,000 persons primarily from Palm Beach County, Florida. The distribution of the settlement proceeds is described in detail in the Agreement attached to Plaintiff's Motion for Certification of Settlement Class and for Preliminary Approval of Settlement Agreement and Supporting Memorandum, which was previously provided.

**EXHIBIT 2**

NEW YORK ♦ LONDON ♦ LOS ANGELES ♦ PARIS ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND

MUNICH ♦ PRINCETON ♦ FALLS CHURCH ♦ WILMINGTON ♦ NEWARK ♦ MIDLANDS, U.K. ♦ CENTURY CITY ♦ RICHMOND ♦ LEESBURG

reedsmith.com

May 9, 2006
Page 2

**ReedSmith**

      We have not provided the list of class members given the nature of the lawsuit and the privacy issues raised therein. If you nevertheless still require this list, please let us know, and we will provide the same to you.

      We previously provided all other information requested in the OCC's recent Bulletin to the extent it was available. If you have any questions or need further information, please do not hesitate to contact me.

Very truly yours,

REED SMITH LLP

By: _Joseph E. Culleiton_
     Joseph E. Culleiton

cc:    Tod Aronovitz, Esquire (w/encls.)
       John A. Yanchunis, Esquire (w/encls.)
       Peter W. Homer, Esquire (w/encls.)
       Mary J. Hackett, Esquire (w/encls.)
       Dianna C. Wyrick, Esquire (w/encls.)