UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

Case No. 05-80806-CIV-Middlebrooks/Johnson

ALLISON J. DAVIS, on behalf of
herself and all others similarly situated,

      Plaintiff,

vs.

BANK OF AMERICA, N. A.,

      Defendant.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF HER MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT,
FINAL CERTIFICATION OF THE CLASS, AND
INCENTIVE AWARD TO CLASS REPRESENTATIVE**

Plaintiff, ALLISON J. DAVIS, on behalf of herself and all others similarly situated ("Plaintiff"), submits this Memorandum of Law in Support of the Motion for Final Approval of Proposed Settlement, Final Certification of the Class and for Incentive Award ("Motion"). As set forth below, the proposed Settlement Class meets the requirements of class certification under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), the settlement is fair and reasonable and should be approved by the Court, and the Court should approve an incentive award to Plaintiff.

**I.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF
RULE 23 AND SHOULD BE CERTIFIED.**

"A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Lipuma v. American Express*



*Co.*, 406 F.Supp.2d 1298, 1314 (S.D.Fla. 2005)(quoting *Woodward v. NOR-AM Chem. Co.*, 1996 WL 1063670 *14 (S.D.Ala.1996)).

For purposes of settlement, Plaintiff seeks certification of the following class under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3):

> All persons who meet all of the following criteria:
>
> (i)     whose personal information was provided by the DHSMV[1] to BOA[2] in May, 2003;
>
> (ii)    who are not and have not been employed by BOA or any of its subsidiaries, parents (or their subsidiaries) or affiliates since March, 2003; and
>
> (iii)   who are not and have not been members of the federal judiciary since March, 2003.

**a.  The Four Prerequisites of Rule 23(a) Are Clearly Satisfied.**

In order for a class to be certified, the four prerequisites of Federal Rule of Civil Procedure Rule 23(a) must be satisfied: numerosity, commonality, typicality and adequacy. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001); *Association for Disabled Americans, Inc. v. Amoco*, 211 F.R.D. 457 (S.D. Fla. 2002).

**1.      Numerosity.**

The numerosity requirement under Rule 23(a)(1) requires "that the class is so numerous that joinder is impracticable, not impossible." *Fabricant, at 313*(citing *Kreuzfeld, A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D.Fla. 1991). There is no definite standard as to the size of a given class. *Fabricant* at 313(citation omitted). A plaintiff need not show the precise number of members of the class to substantiate numerosity.[3] Based on records obtained from

---

[1] "DHSMV" refers to the Florida Department of Highway Safety and Motor Vehicles.

[2] "BOA" refers to the Defendant, Bank of America, N.A.

[3] As explained in *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983),

[W]hile there is no fixed numerosity rule, 'generally less than 21 is inadequate, more than 40 is adequate,

BOA, Plaintiff estimates that the Class for which conditional certification is sought contains 44,437 members.  Under any standard, the numerosity requirement set forth in Rule 23(a)(1) is clearly met.

### 2. Commonality.

The commonality prerequisite set forth in Rule 23(a)(2) requires that there be questions of law or fact common to the class.  Commonality is satisfied when there is "at least *one* issue affecting all or a significant number of proposed class members." *Fabricant*, 202 F.R.D. at 313 (citation omitted).  Federal courts recognize that the requirement under Rule 23(a)(2) that "questions of law or fact common to the class" exist is to be read liberally. *See, e.g., Armstead v. Pingree*, 629 F.Supp. 273, 280 (M.D.Fla. 1986).

In this case, there are several common questions of law or fact arising out of the common course of conduct by Defendant.  These common factual and legal questions include the following:

(A)    Whether BOA knowingly obtained, disclosed or used individuals' "personal information" and/or "highly restricted personal information" contained in the motor vehicle records of DHSMV, for marketing and other purposes not permitted under the DPPA;

(B)    Whether BOA or the state of Florida received the express written consent of Class Members, prior to BOA obtaining their "personal information" and/or "highly restricted personal information" contained in motor vehicle records kept by DHSMV; and

(C)    To what extent BOA is liable to Plaintiff and Class Members for damages and equitable relief under the DPPA.

Accordingly, Plaintiff asserts that the commonality prerequisite is met.

---

with numbers between varying according to other factors.' *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1552 (11th Cir. 1986) *cert. denied*, 479 U.S. 883 (1986) (citing 3B *Moore's Federal Practice*, Para. 23.05[1] at n.7 (1978).

### 3.    Typicality.

The third prerequisite for maintaining a class action is that the claims of the class representative be "typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3).  "In other words, typicality requires a nexus between the class representative's claims or defenses and the common questions of fact or law which unite." *Fabricant,* 202 F.R.D. at 313 (citing *Kornberg v. Carnival Cruise Lines* 741 F. 2d 1332, 1337 (11th Cir. 1984)).  Typicality, however, does not mean identicality, but rather a resemblance. *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir.1993).  A plaintiff's claims are typical of the claims of the class "if they stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory." *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996).

Plaintiff's claims are not only typical of Class Members' claims, but also are virtually indistinguishable because all such claims arise from a common course of conduct involving the obtainment by BOA of Class Members' "personal information" and/or "highly restricted personal information" contained in the motor vehicle records maintained by DHSMV for marketing and other purposes, in violation of the DPPA.

### 4.    Adequacy of Representation

The fourth prerequisite of Rule 23 (a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class and (2) class counsel possesses the competence to undertake the litigation." *Fabricant,* 202 F.R.D. at 314 (citation omitted).

Plaintiff has no interests that are adverse or antagonistic to the interest of the Class, rather

Plaintiff and the Class share common interests, and Plaintiff has shown her commitment to the vigorous pursuit of the claims she shares with the Class. Plaintiff helped prepare the case, participated in litigation, including discovery, mediation and the negotiations which led to a settlement of the claims of the class. She participated in discovery, which included responding to written responses to discovery and submitting to a deposition in West Palm Beach.

Plaintiff has retained qualified and experienced counsel, all of whom have extensive experience in complex litigation and class actions and all of whom have exhibited extensive knowledge of the law applicable to the Class Members' claims. Plaintiff's counsel also have sought and have been granted class certification in many other cases in both federal and state courts, including this Court. Plaintiff's counsel have committed the necessary resources to investigating and pursuing the claims of absent Class Members and have committed the resources necessary to protect fully the members of the Class. The qualifications and experience of class counsel was submitted previously to this Court. The requirements of adequacy of representation are easily met here.

Accordingly, Plaintiff asserts that the members of the Class are more than adequately represented by Plaintiff and her counsel in this cause.

      b.        **The Class Should be Certified Under Rule 23(b)(2) and Rule 23(b)(3)**

Once the Rule 23(a) prerequisites are satisfied, in order to obtain class certification, Plaintiff must demonstrate also that the action satisfies one or more of the three subdivisions of Rule 23(b). *See In re Managed Care*, 2005 U.S. Dist. LEXIS 21472 * 7 (S.D. Fla. 2005) Where, as in this case, "injunctive relief and damages are both important components of the relief requested, courts have regularly certified an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) in the same action." *Davis v. Southern Bell Tel. & Tel. Co.*, 1993 WL

593999, *7 (S.D. Fla. Dec.23, 1993), *reconsideration granted on other grounds,* 158 F.R.D. 173 (S.D.Fla.1994)(citations omitted).

The injunctive relief provided for in this Settlement will prevent BOA from using any data relating to "personal information" or "highly restricted information" obtained in May, 2003 from motor vehicle records maintained by the DHSMV, and will require BOA to destroy that data that it previously obtained from DHSMV in May, 2003. This injunctive relief will therefore provide extremely important safeguards in the protection of the privacy of all members of the Class. In addition, the Settlement will provide important monetary relief of a sum of money up to $150 to each Participating Class Member whose "personal information" or "highly restricted personal information" contained in DHSMV motor vehicle records was obtained by BOA for an impermissible purpose without the Class Member's permission, a claim that BOA has continuously contested and does not concede even in its agreement to settle the case. Plaintiff believes the Settlement provides substantial relief and common benefit to the Class, is in the best interests of the Class, and fairly resolves the claims alleged. Therefore, it is appropriate for the Class in this Action to be certified for settlement purposes pursuant to Rule 23(b)(2) and Rule 23(b)(3).

### 1. Rule 23(b)(2)

Parties seeking class certification under Rule 23(b)(2) must show that the defendant has acted or refused to act on grounds generally applicable to the class, and that final injunctive or declaratory relief must be appropriate to the class as a whole. Fed.R.Civ.P. 23(b)(2).

BOA clearly acted on grounds generally applicable to the class by requesting and obtaining from the DHSMV Florida motor vehicle records reflecting personal information of owners or lessees of Aston Martin, Bentley, BMW, Ferrari, Jaguar, Lamborghini, Lotus,

Maserati, Mercedes Benz, and Rolls Royce motor vehicles in Palm Beach County, Florida. Plaintiff contends that BOA did not have a permissible purpose to obtain such information under the DPPA. As discussed above, Plaintiff seeks conditional certification of the Class under Rule 23(b)(2) in order to preclude BOA from using the protected information and to require BOA to destroy the information that Plaintiff contends BOA had no legal right to obtain. "Requesting ....an injunction forcing defendants to comply with the law is precisely the type of class appropriate for class certification under Rule 23(b)(2)." *Fabricant v. Sears Roebuck*, 202 F.R.D. at 316.

        2.      **Rule 23(b)(3)**

In seeking class certification under Rule 23(b)(3) a party must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individuals members" and "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). This "inquiry into whether common questions predominate over individual questions is generally focused on 'whether there are common liability issues which may be resolved efficiently on a class-wide basis.'" *Agan v. Katzman & Korr*, 222 F.R.D. 692 (S.D.Fla. 2004)(quoting *Brown v. SCI Funeral Serv. of Fla., Inc.* 212 F.R.D. 602, 606 (S.D.Fla. 2003). Further, predominance is "easily met" when "all class members' claims arise from a common nucleus of facts." *Macarz v. Transworld Sys., Inc.* 193 F.R.D. 46, 54 (D. Conn. 2000).

As discussed previously, the claims of the class members arise from BOA's common course of conduct of knowingly obtaining individuals' "personal information" and/or "highly restricted personal information" contained in the motor vehicle records of DHSMV, for marketing and other purposes not permitted under the DPPA. Thus, the Class Members' claims

arise from a nucleus of operative facts and involve questions of law common to all Class Members. Therefore, individual issues with respect to the claims asserted are virtually non-existent and the issues of fact and law common to the class predominate.

With regard to the inquiry as to whether the class action is the superior method for a particular case the courts have found that the focus is on "increased efficiency." *Agan v. Katzman & Korr*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1359 (11th Cir. 2002). Class actions are "particularly appropriate where....it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *In re Terazosin*, 220 F.R.D. at 700 (internal citations omitted).

Generally, a class action is superior to other methods of adjudication where the individual claims would yield such small recoveries that individual actions would not be economically viable. *See, e.g. In re Inter-Op Hip Prophesies Liability Litigation*, 204 F.R.D. 330, 348 (N.D. Ohio 2001). In *Amchem Prod. Inc. v. Windsor*, the Supreme Court observed that a principle justification for class actions is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." 512 U.S. 591, 617 (1997). The size of each class member's damage claim is relatively modest, making it much more economically viable to pursue this case as a class. A class action is not only the superior method for resolving this controversy; it is the *only* viable way for the Plaintiff to seek redress for the violations of the DPPA.

The superiority of proceeding as a class action is further demonstrated by the efficiencies inherent in adjudicating the common issues in a single action. Instead of multiple cases involving the same facts and the same issues, needlessly taxing the resources of the courts, there is a single action in which those disputes can find resolution.

8

## II.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

Strong judicial policy favors resolution of litigation short of trial, particularly in class

action suits. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) (the law generally favors

and encourages the settlement of class actions); *Whitford*, 147 F.R.D. at 140 (same); *In re Rio*

*Hair Naturalizer Products Liability Litig.*, MDL No. 1055, 1996 WL 780512 (E.D. Mich., Dec.

20, 1996) (collecting Sixth Circuit authorities).[4] Settlements of complex cases contribute greatly

to the efficient utilization of scarce judicial resources and achieve the speedy resolution of

justice, for a "just result is often no more than an arbitrary point between competing notions of

reasonableness." *In re Corrugated Container Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir.

1981).   Because settlement is a preferred means of dispute resolution, there is a strong

presumption by courts in favor of settlement. *Rio Hair*, 1996 WL 780512, at *11; *In re Southern*

*Ohio Correctional Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1977); Moore's Federal Practice,

*Manual for Complex Litigation (Third)* §30.42 (1995).

### a.     The Proposed Settlement Exceeds the Standards for Judicial Approval

To approve a proposed class action settlement, the court must find it to be "fair, adequate,

and reasonable." *Access Now, Inc., v. Cunard Line Limited Co.*, 2001 U.S. Dist. LEXIS 21481

(S.D. Fla. 2001); *Behring*, 737 F.2d at 986.   In making this overall determination, the court

considers the following factors:

(1)     the complexity, expense and likely duration of the litigation;

(2)     the reaction of the class to the settlement;

---

[4]*See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation ...."); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (strong judicial policy favors settlements, particularly where complex class action litigation is concerned).

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the risks of establishing liability; and,

(5)     the likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement;

*Behring*. Courts have also considered these factors:

(6)     the judgment of experienced trial counsel; and

(7)     the public interest.

*Whitford*, 147 F.R.D. at 140 (and authorities cited therein); *Vukovich*, 720 F.2d at 922-23; *In re Telectronics Pacing Systems, Inc., Accufix Atrial "J" Leads Products Liab. Litig.*, MDL-1057, Master File No. C-1-95-87, slip op. at 42 (S.D. Ohio Mar. 5, 1999). Courts have emphasized that the above factors should not be applied in a "formalistic" fashion. *Whitford* 147 F.R.D. at 140 ("A class action settlement cannot be measured precisely against any particular set of factors."). The ultimate objective is to determine whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued. *Bailey v. Great Lakes Canning*, 908 F.2d 38, 42 (6th Cir. 1990); *see also Rio Hair*, 1996 WL 780512, at *11 ("The touchstone for final approval is the effect on the class as a whole in light of the particular circumstances ...."). Application of these criteria here shows that the proposed Settlement should be approved as fair, adequate and reasonable.[5]

### 1.     Continued Litigation Would Be Costly

Courts consistently have viewed the expense and possible duration of litigation as factors appropriately considered in evaluating the reasonableness of a settlement. *Class Plaintiffs*, 955

---

[5]The court may not modify the proposed settlement, but must approve or disapprove the proposed settlement "as a whole" in relation to all of those concerned. *See Evans v. Jeff D.*, 475 U.S. 717, 727, 106 S. Ct. 1531, 89 L. Ed. 2d. 747(1986); *Telectronics*, slip op. at 41.

F.2d at 1292 ("complexity, duration, and sheer enormity of [the pending class action] weigh[ed] heavily against a conclusion that the district court abused its discretion in approving the ... settlement"); *Rio Hair*, 1996 WL 780512, at *12 ("costs of and delays inherent in the prosecution and defense of ... complex, protracted litigation necessarily are substantial");[6] *see Prudential II*, 148 F.3d at 318; *ManuLife*, slip op. at 10; *Equitable of Iowa*, 1998 U.S. Dist. LEXIS 1557, at *80-81.

By reaching the Settlement, the parties have avoided the need for such protracted litigation and have established a means for prompt resolution of Class Members' claims against BOA.  Class Members will receive all of the settlement relief immediately after the Court issues its Final Order and Judgment.  These expedited measures provide meaningful and timely benefits to Class Members.  Indeed, the relief obtained through the Settlement would constitute an exceptional recovery even if the action had been successfully tried.  The risks of maintaining this litigation as a class action through trial and appeal weigh in favor of approving this Settlement with its monetary recovery for the class, certain outcome and immediate relief, especially where, as here, Class Members have the right to opt-out and pursue their own actions, if they so desire.

**2.      The Parties Have Aggressively Litigated and Negotiated**

"There is no precise yardstick to measure the amount of litigation that the parties should conduct before settling." *Rio Hair*, 1996 WL 780512, at *13.  Even settlements reached at a very early stage and prior to formal discovery may be approved where the settlement represents

---

[6] *See also Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("due to the relative complexity of the issues involved and the amount of data that would need to be processed, the costs of litigating this matter through trial would likely be high" and, due to the fact that there are over a hundred thousand class members involved, "the task of poring through the relevant records would clearly be a significant undertaking"); *Officers for Justice*, 688 F.2d at 625 (the expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of a settlement).

11

substantial concessions by both sides and there is no evidence of collusion. *See, e.g., Weiss v. Mercedes-Benz of North America, Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) ("Admittedly, the case is still in the early stages of discovery.").

This litigation has indeed reached the stage at which "the parties certainly ha[d] a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  As detailed in the *Declaration of John Yanchunis*,[7] here the parties developed a substantial appreciation of the merits of the case before settling.  Plaintiff's Counsel conducted extensive formal and informal discovery, from the extensive pre-complaint investigation to filing of the complaints, to the execution of the Stipulation of Settlement. *Id*.  Plaintiffs' investigation included researching scores of legal and factual issues, studying publicly available information, reviewing and analyzing documents produced by BOA, and deposing BOA employees.

### 3.    The Risks Involved in Further Litigation

The next factor asks the Court to balance the likelihood of ultimate success on the merits against the relief offered by the proposed Settlement. *Whitford*, 147 F.R.D. at 140; *see generally Weiss*, 899 F.Supp. at 1301 ("[T]he risks surrounding a trial on the merits are always considerable."); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).  In assessing the fairness, reasonableness and adequacy of the Settlement, the Court must balance the risks of establishing liability and damages against the benefits afforded to the Class Members, and the ***immediacy*** and ***certainty*** of a substantial recovery against the risks of continuing litigation.

---

[7] Exhibit 1 to Class Counsel's Motion for Award of Attorney's Fees.

As described above, based on discovery undertaken and their extensive experience in similar litigation, Plaintiff's Counsel assessed the risks of establishing liability and damages versus the benefits provided in the proposed Settlement. While Plaintiff believes that her affirmative case was exceedingly strong – and obtained an excellent Settlement on that basis – BOA nevertheless has a number of potentially formidable defenses, such as favorable constructions of the DPPA, its defenses concerning its liability and the discretion of the Court in connection with not only the record of any damages, but also their amount. These risks are especially acute when defendants have a large litigation "war chest" at their disposal, as does BOA. Indeed, BOA contested, and expressed an intention to continue contesting, virtually every aspect of Plaintiffs' claims. *Id.* Though Plaintiff asserts that her claims have substantial merit, BOA is represented by highly experienced and competent counsel, who would no doubt continue to mount a zealous, thorough and no-holds-barred defense to her claims. *Id.* Under the Settlement, by contrast, the Class Members will receive recovery regardless of the potential merit of these defenses. Settlement of this action also avoids the risks and costs of competing experts that could result in a finding against Plaintiffs at trial. As aptly recognized in *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997), "the one constant about litigation ... is that the ultimate jury result is uncertain, unknown and unpredictable."

### 4.    The Judgment of Experienced Counsel

Although the Court must make its own evaluation of a class settlement, it should avoid simply substituting its judgment for that of counsel who negotiated the settlement. *Equitable of Iowa*, 1998 U.S. Dist. LEXIS 1557, at *82 (absent fraud or collusion, the court "'should be hesitant to substitute its own judgment for that of counsel'") (quoting *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992)); *see also Telectronics*, slip op. at 45 ("The court should

always give significant weight to the belief of experienced counsel that the settlement is in the best interest of the class.").[5] Nor should a proposed settlement be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625.

As previously discussed, the Settlement here is the product of extensive, adversarial, arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of this litigation and class action litigation generally.   Plaintiff's Counsel are well acquainted with the prosecution of class actions, including specifically life insurance and related consumer class actions.   The Settlement therefore enjoys a presumption of fairness and reasonableness. *Equitable of Iowa*, 1998 U.S. Dist. LEXIS 1557, at \*82-\*83 (and authorities cited therein); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

**5.    The Notice Program and Class Members Reaction to the Settlement**

Plaintiff's Counsel negotiated a notice program designed to notify Class Members of the Settlement through the U.S. Mail and through publication in the Palm Beach Post, the newspaper

---

[5]*See also* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.41, at 11-91 (3d ed. 1992) ("*Newberg*"); *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 554 (6th Cir. 1982) (the court may rely on the ability of competent counsel to accurately assert the strengths and weaknesses of each litigant's case); *see, e.g., Lake*, 900 F. Supp. at 732 ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class.'") (citation omitted).

published and circulated in Palm Beach County, to inform them about the benefits available under the settlement. *Declaration of L. Stephens Tilghman.*[8]

## A.      The Class Action Administration Center

The Settlement Agreement provided for an Administration Center (the "Administration Center"), which was created to provide as much information as possible to Class Members about the Settlement and to send out additional and supplemental information, including notice packages.  The Administration Center also handled opt-out requests, election form processing, research requests, claim form requests and many other related administrative issues.   The Administration Center was staffed with employees of the Administrator trained on the Settlement who were available to answer questions through a toll free telephone number.  In addition, the Settlement Administrator maintained a website. *Declaration of L. Stephens Tilghman.*

## B.  The Class Notice Package, Research and Database Enhancements

As part of the Notice Program, the parties created a detailed, yet simple, Class notice package.  In addition to the Class notice itself, the package also contained documents written in straightforward, non-legalistic language customized for each Class Member that explained the settlement benefits and Class Members' rights and options under the Settlement.

## C.  Toll-Free Phone Lines

A toll-free number for the Administration Center was repeated throughout the notice package (the "notice line").  The notice line was managed by trained operators. *Declaration of L. Stephens Tilghman.*

---

[8] The Declaration of L. Stephens Tilghman is attached hereto and incorporated herein as Exhibit "A."

**D.      The Notice Provided to the Class Exceeds Minimum Notice Requirements.**

**1.      Distribution and Timing of the Notice**

The means employed to distribute notice of a class settlement must be reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object.  Due Process requires the "best notice practicable" under the circumstances. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 139 (W.D. Ky. 1992).  Due Process was satisfied here by sending a copy of the notice by first class mail to each class member whose address was located with reasonable effort along with publication notice. *Eisen v. Carlyle & Jacquelin*, 417 U.S. 156, 173-77, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974); *Mullane*, 339 U.S. at 314-18.

Here, the parties provided an appropriate notice program:

- The notice package was mailed via first class mail to each Class Member based on the last known address available to BOA;

- The claims administrator performed traces and remailed all notices which were returned as undeliverable and for which a mailable address was ultimately located;

- The print advertising and media directed to Class Members carried a toll free number and a P.O. Box for individuals to request the notice package and to speak with trained operators and plaintiffs' counsel who could determine if they were in fact entitled to receive benefits through the Settlement;

- All of the notice materials contained toll-free phone numbers for the Administration Center, which was established to provide Settlement information to those who received notice and to enable specially trained operators to update the Company's address records and send additional mailings;

*Declaration of L. Stephens Tilghman.*    Together, these steps exceed the procedural and constitutional requirements for Class notice under Fed.R.Civ.P. Rule 23(c)(2) and (e). *Accord In re Prudential Ins. Co. of Am. Sales Practices Litig*, 962 F. Supp. 450, 527-28 (D.N.J. 1997)

("*Prudential I*"), *aff'd in part*, 148 F.3d 283 (3d Cir. 1998) ("*Prudential II*"), *cert. denied*, 525 U.S. 1114 (1999).

Class Members were also given ample opportunity to decide whether to remain in the Class, to opt out or to object.  Notice was sent by first class mail to 44,437 potential class members on April 17, 2006, and notice was published in the Palm Beach Post and was run on April 26 and 27, 2006.[9] *Declaration of L. Stephens Tilghman*.  Thus, Class Members had ample time following the mailed and published Class notice to determine whether to participate in the Settlement.

### 2.      Content of the Notice and the Opportunity to Opt-Out

Due process was satisfied here where class members received notice, an opportunity to be heard and participate in the litigation, and an opportunity to opt out of the class. *See Declaration of L. Stephens Tilghman*; *Phillips Petroleum v. Shutts*, 472 U.S. 797, 811-12, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985); *accord Prudential II*, 148 F.3d 283, 305 (citing *Shutts*, 472 U.S. at 811-12); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 608 (1987) (citing *Shutts*, 472 U.S. at 811-12).

The Class notice package included a formal notice advising, *inter alia*, Class Members that they will be bound by the judgment or order of the Court if they do not request exclusion by May 8, 2006 and that any Class Member may enter an appearance or objection with or without counsel, if desired.  The notice also included a summary of the Release as part of the Settlement. The notice further advised that the final hearing would be held on June 21, 2006, at which time

---

[9] Notice package mailings, summary notice publications and distribution of notice cards were staggered for Class Members to repeatedly be notified of the Settlement and to ensure increased awareness of it.  The staggered notifications also helped maintain a steady call volume at the Administration Center, ensuring quick response time, operator availability to all callers and a high level of assistance.

Class Members or their attorneys may be heard.  The notice also informed the Class of the nature

of the pending litigation and the terms of the Settlement. *Declaration of L. Stephens Tilghman.*

      **E.**     **Class Members' Reaction to the Settlement**

     Under the Court's Preliminary Order, the final date for filing objections to the Settlement

or opting out was May 8, 2006.  Seventeen members of the class out of 44,437, less than

.000383% of the total number of class members within the Class, requested exclusion from the

Settlement.   Moreover, as of June 6, 2006, 7224 class members filed claims seeking the

monetary benefits provided by the settlement.[10] *Declaration of L. Stephens Tilghman.*  This is a

claims rate of approximately 16.21%.  There were no objections filed to the proposed settlement

before the Court. *Amoco*, 211 F.R.D. 457, 460-461. (noting lack of objectors)   The Class'

reaction then, can be fairly described as overwhelmingly supportive. *Whitford*, 147 F.R.D. at 141

("The small number of objectors is a good indication of the fairness of the settlement.") (and case

cited therein); *Telectronics*, slip op. at 46 ("a diminutive amount of objectors may signify that a

settlement is fair.") *see, e.g., Prudential I*, 962 F. Supp. at 537-38 (although not dispositive, lack

of negative feedback from the class supports approval of settlement); *ManuLife*, slip op. at 14

(same); *Pacific Life*, slip op. at 78-79 (same).

      **6.**     **Public Interest**

     It is in the public interest to resolve all such claims globally, rather than through

duplicative, overlapping and/or individual suits which would drain judicial resources while at

best, resolving only a tiny fraction of all claims.  And it is in the public interest to do so in a

---

[10]At the final approval hearing on June 21, 2006, the parties will provide the Court with all
requests for exclusion.  Further, the objections, the motions and the complaint in intervention
filed by objecting counsel will be addressed in a separate response.

manner that tailors the nature and the extent of the relief extended to each Class Member to that Class Members' particular circumstances.  As the Sixth Circuit has stated:

> Settlement agreements should ... be upheld whenever equitable and policy considerations so permit.  By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter.  An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

## III.    INCENTIVE AWARD

Federal courts routinely approve incentive award payments to named plaintiffs in recognition of their efforts in achieving the results obtained. Many cases note the obvious public policy reasons for encouraging individuals with small personal stakes to serve as class plaintiffs in meritorious cases. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *In re Cendant Corp.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002); *Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (D. Cal. 1995) (listing factors).  These cases are based on the fundamental premise that named plaintiffs undertake obligations, provide input and take risks not shared equally by absent class members, thus justifying different treatment.   In this case, Plaintiff clearly undertook obligations, provided input and bore risks not shared equally by absent class members, thus justifying different treatment for her.  Plaintiff partook in case preparation, actively participated in litigation, including discovery, mediation and the negotiations which led to a settlement of the claims of the class, providing the substantial relief described above.   She participated in discovery, which included responding to written responses to discovery and submitting to a deposition in West Palm Beach.  An incentive award to Plaintiff will not and has not in any way diminished relief to the Class.  Defendant has independently agreed to pay Plaintiff an incentive award not to exceed $5,000.  As such, Plaintiff is well deserving of the incentive award set forth

in the Settlement Agreement.

## IV.   CONCLUSION

Each of the factors considered above demonstrates that this Settlement meets or exceeds the applicable standards for fairness, reasonableness and adequacy.  The proposed Settlement protects the public interest by affording members of the class an avenue of prompt relief at no cost and by resolving Class Members' claims globally rather than through duplicative individual suits which would drain judicial resources while resolving only a tiny fraction of all claims. Accordingly, this Court should certify for settlement purposes the class defined herein, award the requested incentive payment to Plaintiff, and grant final approval of the Settlement.

DATED this __13th__ day of June, 2006.

Respectfully Submitted,

For the Plaintiff:

JOHN A. YANCHUNIS
Florida Bar No. 324681
MARK S. FISTOS
Florida Bar No. 0909191
**JAMES HOYER NEWCOMER
& SMILJANICH, P.A.**
3301 Thomasville Road, A200
Tallahassee, Florida 32308
850-325-2680 Telephone
850-325-2681 Facsimile
TOD ARONOVITZ
Florida Bar No. 186430
STEVEN JAFFE
Florida Bar No. 390770
**ARONOVITZ TRIAL LAWYERS**
Suite 2700 – Museum Tower
150 W. Flagler Street
Miami, Florida 33130
305-372-2772 Telephone
305-375-0243 Facsimile

JOEL S. PERWIN
Florida Bar No. 316814
**JOEL S. PERWIN, P.A.**
169 E. Flagler Street
Alfred I. DuPont Building, Suite 1422
Miami, Florida 33131
305-779-6090 Telephone
305-779-6095 Facsimile

PETER A. PORTLEY
Florida Bar No. 112563
**PORTLEY AND SULLIVAN**
Lighthouse Point Professional Building
2211 E. Sample Road, Suite 204
Lighthouse Point, Florida 33064
954-781-7600-Telephone
954-941-3469-Facsimile

JAMES K. GREEN
Florida Bar No. 229466
**JAMES K. GREEN, P.A.**
Suite 1650, Esperante´
222 Lakeview Avenue
West Palm Beach, Florida 33401
561-659-2029 Telephone
561-655-1357 Facsimile

DAVID D. WELCH
Florida Bar No. 109537
**WELCH & FINKEL**
Suite 400–Washington Mutual Bank Bldg.
2401 E. Atlantic Boulevard
Pompano Beach, Florida 33062
954-943-2020 Telephone
954-782-1552 Facsimile

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was **faxed and mailed** this ___13th___ day of June, 2006 to:

      Mary J. Hackett, Esq.
      Joseph E. Culleiton, Esq.
      **REED SMITH LLP**
      435 Sixth Avenue
      Mellon Square
      Pittsburgh, Pennsylvania  15219
      412-288-3131-Telephone
      412-288-3063-Facsimile

      Peter W. Homer, Esq.
      Gregory J. Trask, Esq.
      **HOMER & BONNER, P.A.**
      The Four Seasons Tower
      1441 Brickell Avenue, Suite 1200
      Miami, Florida  33131
      305-350-5100-Telephone
      305-372-2738-Facsimile

Counsel for Defendant, Bank of America

                        By:_____

                            JOHN A. YANCHUNIS

                            Counsel for Plaintiff, Allison J. Davis

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
West Palm Beach Division

Case No. 05-80806-CIV-Middlebrooks/Johnson

ALLISON J. DAVIS, on behalf of herself
and all others similarly situated,

      Plaintiff,

vs.

BANK OF AMERICA, N.A.

      Defendant.

_____/

**AFFIDAVIT OF L. STEPHENS TILGHMAN**

STATE OF ALABAMA          )

COUNTY OF JEFFERSON     )

Before me, the undersigned authority in and for said State and County, personally appeared L. Stephens Tilghman, who is known to me, and who, after being duly sworn, deposed and said as follows:

1.     I am over twenty-one years old, and I have personal knowledge of the matters set out below. If called as a witness in this matter, I could competently testify to the following:

2.     I am President of Tilghman & Co., P.C. ("Tilghman & Co."). Tilghman & Co. has provided settlement administration services for class action settlements since 1994. Since then, we have served as the settlement or claims administrator for over one hundred seventy-five (175) class action settlements in both federal and state courts.

3.      Defense counsel for Bank of America, N.A. (hereinafter referred to as "Defendant") provided Tilghman & Co. with an electronic file containing the names and addresses of class members. The number of records or accounts provided to Tilghman & Co. totaled 47,122.  Upon reviewing the file provided, it was determined that 2,685 records related to nonindividuals (i.e. businesses, institutions) and therefore were not members of the defined class.

4.      Tilghman & Co. updated the last known address information by use of the United States Postal Service's National Change of Address database.

5.      Tilghman & Co. handled the printing and mailing of the Court-approved class notices to settlement class members in accordance with Sections 9(c) and 9(d) of the Settlement Agreement. The Court-approved claim form was included with each notice. Specifically, Tilghman & Co. mailed 44,437 notices and claim forms with first class pre-sorted postage on April 17, 2006. A copy of the notice and claim form mailed to class members is attached as Exhibit A.

6.      Notices returned as undeliverable by the Post Office were recorded as undeliverable. When the Post Office provided a newer address, the name and address data files were updated to reflect the newer address.   Tilghman & Co., sent a list of notices returned without a newer addresses to Trans Union Corporation in an attempt to obtain an updated address. Notices for which newer addresses were obtained were subsequently mailed to class members at the newer addresses provided by the Post Office or Trans Union Corporation.

7.      In addition to mailing the Notices and Claim Forms as discussed above, Tilghman & Co. caused a "Summary Notice of Class Action Settlement" to be published

in *The Palm Beach Post*.  The Summary Notice is identical to the document approved by the Court.  The Summary Notice was published in *The Palm Beach Post* on April 26, 2006 and again on April 27, 2006.  A copy of the Proof of Publication is attached as Exhibit B.

8.     Tilghman & Co. set-up a toll free telephone number for class members to call with questions about the proposed settlement.  The telephone lines were staffed with employees trained to respond to class member questions.

9.     Tilghman & Co. created a web site, www.noticeclass.com/davissettlement.  The following documents were posted on the web site;

     a.  Notice of Class Action, including Claim Form;

     b.  Summary Notice of Class Action;

     c.  Plaintiff's Motion for Certification, including the Settlement Agreement; and

     d.  Preliminary Approval Order.

Tilghman & Co. subsequently posted the Notice of Hearing on the web site to inform class members of the time and location of the Fairness Hearing.

10.     Tilghman & Co. received a total of 7,224 claim forms.

11.     Tilghman & Co. received 17 timely requests for exclusion.

12.     Tilghman & Co. has complied with the procedures set forth in Section 15(a) of the Settlement Agreement with respect to all class notices.

13.    Further Affiant sayeth naught.

L. Stephens Tilghman

Sworn to and subscribed before
me this 7th day of June, 2006.

Notary Public

KELLY M. LAWRENCE
NOTARY
PUBLIC
ALABAMA STATE AT LARGE

MY COMMISSION EXPIRES MAY 3, 2008
My Commission Expires:  _____