UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-80806-CIV-MIDDLEBROOKS/Johnson

ALLISON J. DAVIS

    Plaintiff,

vs.

BANK OF AMERICA, N.A.

    Defendant.
_____/



FILED by _____ D.C.

JUN 21 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER APPROVING SETTLEMENT

THIS CAUSE comes before the Court upon the Plaintiff's Motion for Final Approval of Proposed Settlement **[DE #43]**. This case arises out of information obtained by Defendant Bank of America ("BOA") through the Florida Department of Highway Safety and Motor Vehicles (DHSMV) in May 2003. BOA had requested records containing the personal information of owners or lessees of Aston Martin, Bentley, BMW, Ferrari, Jaguar, Lamborghini, Lotus, Maserati, Mercedes Benz, and Rolls Royce motor vehicles in Palm Beach County. The Plaintiff claims that BOA has violated the Driver's Privacy Protection Act, 18 U.S.C. §§2721-2725 (2000) ("DPPA"). On March 31, 2006, this Court entered an order preliminarily approving the parties' class action settlement. On June 21, 2006, the Court held a fairness hearing, giving class members the opportunity to object to the settlement agreement. Hearing no objections, the Court makes the following findings of fact[1] and conclusions of law and gives the settlement final

---

[1] The Court's findings of fact are based largely on the parties' recent submissions, including affidavits submitted along with proposed findings of fact and conclusions of law.

1



approval.

## I. Findings of Fact

### A. Background

Plaintiff and class representative Allison J. Davis is a citizen and resident of Florida. She represents a class of individuals consisting of all individuals (1) whose personal information was provided by the DHSMV to BOA in May, 2003; (2) who are not and have not been employed by BOA or any of its subsidiaries, parents (or their subsidiaries) or affiliates since March, 2003; and (3) who are not and have not been members of the federal judiciary since March, 2003. Defendant BOA is a national banking association with its principle place of business in Charlotte, North Carolina.

The Plaintiff alleges that BOA improperly obtained personal data about the class members from DHSMV and used that information for impermissible purposes in violation of the DPPA. The Bank has denied, and continues to deny, liability. After conducting extensive pre-settlement discovery, including written discovery requests, document production, and depositions, the parties confirmed that DHSMV had provided data on owners of luxury cars in Palm Beach County on one occasion in May, 2003. That data included names, addresses, and other information. BOA contends that it obtained the data for "research purposes," but soon determined that the data was not useful to the Bank. BOA did not disseminate the data, use it for marketing, contact individual class members, or in any other way publish the data. Because it did not disseminate or take any action on the data, BOA contends that it did not violate the DPPA and that the class members did not suffer any actual compensatory harm. Conversely, the Plaintiffs contend that the very fact that BOA obtained their data for research and marketing

purposes violates the DPPA and entitles them to damages.

B. The Settlement Agreement

The parties agreed to settle this dispute without a determination on the merits. Defendant BOA continues to deny liability, and the settlement is not considered to be an admission of liability in any respect. The representative Plaintiff agreed to the settlement on February 28, 2006. Under the Settlement Agreement's terms: (1) BOA will not use, disclose, or sell the data that it obtained from the Florida DHSMV in May, 2003; (2) except as provided in the Settlement Agreement, BOA will destroy the data that DHSMV sent to it; (3) each class member making a claim will be paid up to $150; (4) BOA will pay all settlement administration costs; and (5) BOA will pay the Class Counsel's[2] fees, as determined by this Court, up to $1.2 million.[3] While each class member could receive up to $150, payments to the class members and Class Counsel's fees are not to exceed $6,000,000. Under the Agreement, if the combined payments to class members and Class Counsel would exceed $6,000,000, each class member will receive an amount equal to his or her pro rata share of the difference between $6,000,000 and Class Counsel's fees.

BOA has notified the Office of the Comptroller of Currency ("OCC") and the Florida Attorney General's Office of the proposed settlement in accordance with the Class Action Fairness Act, 28 U.S.C. §1715. After the OCC issued Bulletin 2006-20 on April 21, 2006, BOA

---

[2]Class Counsel refers to: Tod Aronovitz of Aronovitz Trial Lawyers; John A. Yanchunis of James Hoyer Newcomer & Smiljanich, P.A.; David D. Welch of Welch & Finkel; Joel S. Perwin of Joel Perwin, P.A.; Peter A. Portley of Portley and Sullivan; and James K. Green of James K. Green, P.A.

[3]The Plaintiffs filed their motion for attorneys' fees [DE #39] on May 3, 2006. The Court will enter a separate order determining the amount of attorneys' fees owed. The $1.2 million figure noted above is the amount requested by Class Counsel. Nothing in this order should be construed as granting this amount of attorneys' fees.

3

provided a second notice of class action settlement in order to comply withe OCC's bulletin. Neither OCC or the Florida Attorney General have taken any action with respect to the settlement.

On April 17, 2006, the settlement administrator, Tilghman & Co., P.C. sent 44, 437 notices and claim forms to all potential class members. The class members were given the opportunity to object or to opt-out. No class members objected. Nineteen[4] class members have opted-out: Robert Roller Sellers; Bernard Angelo Nigro; Thomas Young; Charles Joseph Eby; Dolores Ballin; Andrea Astern Bienstock; Kowsillia Bahadoor; Richard W. Meyers; Kevin S. Wellman; Rita M. Schuster; Israel Schuster; Shirley Wells Schaefer; Paul Schaefer; Sheila Jean Rheault; Nancy Jean Alleva; Leanne M. Innet; Alexander Theoharous; Jose Luis Heymann; and Maria Seiler. The settlement approved herein does not prejudice in any way any of the potential claims that these individuals may have.

## II. Certification of the Class

The Court finds that the proposed settlement class satisfies all of the requirements of Fed.R.Civ.P. 23. The Court may certify a class for settlement purposes when a settlement is reached before a litigated determination of the class certification issue. *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-75 (5th Cir. 1979).

A. Rule 23(a)

In order for a class to be certified, it must satisfy the four prerequisites of Federal Rule of Civil Procedure Rule 23(a). As discussed by this Court in *Fabricant v. Sears Roebuck*, 202

---

[4]The list of opt-outs provided by the parties indicates seventeen entries. Two of those entries contain two individual names: Rita and Israel Schuster and Shirley and Paul Schaefer.

4

F.R.D. 310, 313 (S.D. Fla. 2001):

> Rule 23(a) provides that one or more members may sue on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable ('numerosity'), (2) there are questions of law or fact common to the class ('commonality'), (3) the claims of the representative are typical of the claims of the class ('typicality'), and (4) the representatives parties must fairly and adequately protect the interest of the class ('adequacy').

For the reasons set forth below, the Court concludes that this Class satisfies all of the requirements of Rule 23(a).

### 1. Numerosity

Rule 23(a)(1) requires "that the class is so numerous that joinder is impracticable." There is no fixed numeric threshold at which Rule 23's numerosity requirement is satisfied; however, the Eleventh Circuit has observed that "generally less than 21 is inadequate, more than 40 is adequate, with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1552 (11th Cir. 1986) *cert. denied*, 479 U.S. 883 (1986) (citing 3B *Moore's Federal Practice*, Para. 23.05[1] at n.7 (1978). Based on records obtained from BOA, the Class for which conditional certification is sought contains 44,437 members. Under any standard, the Court concludes that the numerosity requirement set forth in Rule 23(a)(1) is clearly met.

### 2. Commonality

The commonality prerequisite set forth in Rule 23(a)(2) requires that there be questions of law or fact common to the class. Commonality is satisfied when there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant v. Sears Roebuck*, 202 F.R.D. at 313. In this case, there are several common questions of law and fact arising out of

the common course of conduct by Defendant. These common factual and legal questions include the following:

    (A)    Whether BOA knowingly obtained, disclosed or used individuals' "personal information" and/or "highly restricted personal information" contained in the motor vehicle records of DHSMV, for marketing and other purposes not permitted under the DPPA;

    (B)    Whether BOA or the state of Florida received the express written consent of Class Members, prior to BOA obtaining their "personal information" and/or "highly restricted personal information" contained in motor vehicle records kept by DHSMV; and

    (C)    To what extent BOA is liable to Plaintiff and Class Members for damages and equitable relief under the DPPA.

The Court concludes that the commonality prerequisite is met.

3. Typicality

The third requirement for a class action is "typicality," meaning that there must be a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines*, 741 F.2d 1332, 1337 (11th Cir. 1984). A sufficient nexus is established when the claims and defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. *Id.* Here, Ms. Davis is typical of the entire class as her claims arise from the same release of personal information by DHSMV to BOA.

4. Adequacy of Representation

Finally, Rule 23(a)(4) requires both that (1) the class representative have no interests antagonistic to the class and (2) class counsel possesses the competence to undertake the litigation." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985); *Johnson v. Georgia Highway*

*Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969). Here, there is no evidence or allegation that Ms. Davis has any interest antagonistic to the interests of the class. Plaintiff's counsel represents that she has diligently participated in this litigation, including participation in mediation and discovery. Furthermore, Ms. Davis has retained qualified and experienced counsel whom have extensive experience in complex litigation and class actions. Counsel has appeared knowledgeable of the area of law involving the class claims and appears to have committed the necessary resources to adequately pursue the class's interests. Therefore, the requirements of adequate representation have been met.

B. Rule 23(b)

Once the Court determines that Rule 23(a)'s requirements are fulfilled, it must also determine whether the case satisfies one or more of the three subdivisions of Rule 23(b). Here, certification under both Rule 23(b)(2) and 23(b)(3) is appropriate. Rule 23(b)(2) allows certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief." Here, BOA's requesting, obtaining, and using the class member's information constitute actions generally applicable to the class. The settlement includes an injunction precluding BOA from using, and requiring BOA to destroy, the acquired information. As discussed below, this injunctive relief is an appropriate and effective mechanism for protecting the class members' privacy interests. Therefore, Rule 23(b)(2) is satisfied.

Furthermore, the class satisfies Rule 23(b)(3). That rule requires a plaintiff to demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "that a class action is superior to other

available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). As discussed previously, the claims of the class members here arise from the same course of conduct–BOA's request for and use of the class members' personal data. The common issues of whether BOA had the requisite knowledge to violate the DPPA and whether BOA's use of the data was a permitted purpose under the DPPA would predominate over any individual issues. Furthermore, this action is represents a typical situation that class actions seek to remedy–when small recoveries do not provide sufficient incentive for individual plaintiffs to bring a solo action to vindicate their rights. *See Amchem Prod. Inc. v. Windsor*, 512 U.S. 591, 617 (1997). Furthermore, this class action allows conservation of court resources by resolving the predominant common issues in a single proceeding. Therefore, the class satisfies Rule 23(b)(3) and should be certified.

### III. Evaluation of the Settlement Agreement

The Court must approve all class action settlements. Fed.R.Civ.P. 23(e). "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate, and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).[5] In making this determination, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlement." *Behrens v. Wometco Enters. Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 889 F.2d 21 (11th Cir. 1990); *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). The Court must consider six factors in deciding whether the settlement is fair and reasonable: (1) the likelihood of success at trial; (2) the range of possible

---

[5]There is no evidence or allegations of collusion between the parties here.

8

recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennet v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

A. Likelihood of Success at Trial

A private plaintiff suing under the DPPA must prove that the defendant knowingly obtained, disclosed, or used the plaintiff's personal information "for a purpose not permitted" by the Act. 18 U.S.C. §2724. The DPPA authorizes the Court to award actual damages (but not less than $2,500 in liquidated damages), punitive damages for willful or reckless disregard of the law, reasonable attorneys' fees and costs, and other appropriate equitable relief. The Plaintiffs maintain that BOA violated the DPPA by obtaining class member information from the DHSMV without the class members' prior consent. BOA argues that it cannot be held liable because (1) it did not knowingly obtain the information in violation of the DPPA; (2) it did not use the information for an impermissible purpose under the DPPA; and (3) the class members have not sustained any damages.

BOA represents that it would present evidence that it asked the DHSMV whether obtaining the requested data created any privacy issues. DHSMV confirmed that it would only give BOA data that DHSMV was authorized to disclose. BOA argues that it was permitted to reasonably rely on DHSMV's representation and had no reason to believe DHSMV would not comply with the DPPA. Thus, BOA argues, it did not knowingly violate the DPPA.

BOA further argues that 18 U.S.C. §2721(b)(5) lists "research activities" as a permissible purpose, as long as the data is not published, disclosed, or used to contact individuals. Because

9

BOA did not publish the data, disclose it, or use it to contact individuals, and because BOA quickly determined that the data was not useful, BOA reasons that it cannot be held liable under DPPA. The Plaintiffs contend that BOA's research activities alone were the equivalent of marketing purposes in violation of the DPPA. There also appears to be an issue as to whether the research is a permissible purpose in light of the fact that individual class members did not expressly consent to the DHSMV disclosing their data in the first place.

Finally, BOA argues that awarding monetary damages under DPPA is discretionary and that the Plaintiffs here did not suffer any actual damages. The Plaintiffs argue that their privacy rights were violated and they are therefore entitled to some level of compensation.

All of these defenses present significant issues on liability. While the Eleventh Circuit has recently addressed the level of proof necessary to award damages, *Kehoe v. Fidelity Federal Bank & Trust*, 421 F.3d 1209, 1216-17 (11th Cir. 2005), the issue is far from settled. *See Fidelity Federal Bank & Trust v. Kehoe*, 126 S.Ct. 1612 (2006) (Scalia and Alito, JJ., concurring in denial of cert. but suggesting that the Supreme Court may eventually consider the damages issue). The meaning of DPPA's knowledge requirement is also currently an "open" question. *See Kehoe*, 126 S.Ct. 1612 (2006) (Scalia and Alito, JJ., concurring in denial of cert.). Furthermore, both sides have colorable arguments on whether BOA's research activities constituted an "impermissible purpose" under DPPA. Given that interpretation of DPPA is currently so unsettled, the Court finds that there is a substantial question as to the likelihood of complete success at trial for both parties. This factor weighs in favor of approving the settlement.

B. Range of Possible Recovery and Point At Which Settlement Is Fair

The second and third factors from *Bennett* are often combined. *Behrens*, 118 F.R.D. at

541. The Court must first determine the appropriate standard of damages (in order to calculate the range of recovery), and then go on to determine where in this range of recovery a fair, adequate, and reasonable settlement amount is found." *In re Sunbeam*, 176 F.Supp.2d at 1331. The Plaintiffs claim that class members are entitled to an award of statutory damages of $2,500 for each violation of DPPA, totally $125,000,000. *See* 18 U.S.C. §2724(b)(1) ("The Court may award . . . (1) actual damages, but not less than liquidated damages in the amount of $2,500.") As described above, BOA argues that damages awards are discretionary and that monetary damages are inappropriate here. Thus, the possible recovery could range from $0 to $125,000,000.

The proposed settlement's proposed amount of up to $150 per class member up to a maximum of $6,000,000 minus attorneys' fees and costs is reasonable. Given that award of damages under DPPA is discretionary, $6,000,000 is a reasonable total award, even if it is only a fraction of the $125,000,000 maximum. Significantly, third parties such as the Florida ACLU agree that the monetary and injunctive relief proposed appropriately vindicates the class members' privacy interests. Furthermore, the requirement that BOA destroy the obtained data ensures that the information will not be used impermissibly in the future and vindicates the class members' privacy interests more effectively than any monetary award could. Because the settlement provides both a compensatory monetary award and ensures that the class members' information will not be used in the future, the settlement is a fair, adequate and reasonable recovery in the range of possible recovery for this case. These two factors thus weigh in favor of the settlement.

C. Complexity, Expense, and Duration of Litigation

As noted above, many issues regarding interpretation of the DPPA remain unsettled.

11

*Kehoe* illustrates the potential for the instant litigation to generate many different appellate issues. Resolving novel issues both in this Court and in the Eleventh Circuit would result in protracted litigation, delaying recovery and increasing expense for both sides. Subsequently, the potential complexity, expense, and duration of litigation favors approval of the settlement.

D. Substance and Amount of Opposition to the Settlement

Only nineteen individuals have opted out of the settlement, and no class member has objected to the settlement. Independent third parties, such as the ACLU of Florida, have submitted declarations supporting the settlement. This factor, therefore, weighs in favor of settlement.

E. Stage of Proceedings at Which the Settlement Was Achieved

The settlement was reached after significant discovery. The case was filed in September, 2005, and the parties began exchanging discovery in October, 2005. The parties exchanged answers to written discovery requests, took depositions, and reviewed documents from the parties and third-parties. The settlement was reached after several months of negotiations, including a December, 2005 mediation, before finally reaching a settlement in February, 2006. Because it appears that both sides had substantial opportunity to discover and explore the factual and legal contentions at issue before reaching a settlement, this factor weighs in favor of approving the settlement.

F. Class Action Fairness Act

The Court finds that the parties have complied with the notice requirements of the Class Action Fairness Act, 28 U.S.C. §1715.

### IV. Class Representative Incentive Award

Finally, the Court must scrutinize the proposed $5,000 incentive award to the Class Representative. "A disparate distribution favoring the named plaintiff[] requires careful judicial scrutiny into whether the settlement allocation is fair to the absent members of the class." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983). The plaintiff can rebut the inference of unfairness and "cloud of collusion" that a disproportionate distribution raises by showing that the incentive is justified by legitimate considerations, such as the actions taken by the plaintiff on behalf of the class's interests, whether those interests resulted in substantial benefit to class members, and the amount of time and effort spent by the class representative in pursuing the litigation. *Carnegie v. Mutual Sav. Life Ins. Co.*, 2004 WL 3715446 *24 (N.D. Ala. Nov. 23, 2004).

Here the $5,000 incentive appears to be reasonable and does not appear to be the result of any collusion between the parties. Within the context of the entire $6,000,000 settlement award, the $5,000 incentive is a relatively small amount. Importantly, the incentive award does not diminish the amount available for other class members. Furthermore, Ms. Davis was diligently involved in this litigation, taking time to participate in discovery, mediation, and negotiation sessions. Therefore, the $5,000 incentive award is appropriate.

### V. Conclusion

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that

1) Plaintiff's Motion for Final Approval of Proposed Settlement **[DE #43]** is **GRANTED.**

2) The proposed class, as described above, is **CERTIFIED**, and the Proposed Settlement is **APPROVED**.[6]

3) The class representative, Allison J. Davis, is **AWARDED** an incentive payment of $5,000.00, to be paid by the Defendant.

4) The Court shall retain jurisdiction to enforce the settlement agreement and to enter an order on the amount of attorneys' fees owed to Class Counsel.

5) Plaintiff's Motion to Strike Affirmative Defenses **[DE #20]** and Defendant's Motion for Leave to File Sur-reply to motion to strike affirmative defenses **[DE #25]** are **DENIED AS MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 21 day of June, 2006.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record

---

[6]The Court again emphasizes that nothing in this order or in the approved settlement shall be interpreted as prejudicing any claims by those who have opted out of the settlement.

14